# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Blanche M. Manning | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 97 C 6409 | **DATE** | August 13, 2002 |
| **CASE TITLE** | Kowal-Vern v. Loyola University, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Defendants' Motion for Summary Judgment

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Defendants' Motion for Summary Judgment [69-1] is GRANTED as to the federal claims, Counts I, II, III, IV, and VII. The court declines to exercise supplemental jurisdiction on the state claims. Accordingly, the state claims, Counts V, VI, and VIII, are dismissed without prejudice. The court, having disposed of all of Kowal-Vern's federal question claims, directs the clerk of the court to enter Rule 58 judgment and terminate this case from the court's docket. The parties's pre-trial conference set for August 16, 2002, is stricken as moot.

(11) ■ [For further detail see order attached to the original minute order]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | AUG 14 2002 | 89 |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| | | | date mailed notice | |
| RTS | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials | |


DOCKETED
AUG 1 4 2002

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ARETA KOWAL-VERN, M.D. ) | |
| Plaintiff, ) | |
| v. ) | Hon. Blanche M. Manning |
| LOYOLA UNIVERSITY OF CHICAGO, LOYOLA UNIVERSITY PHYSICIAN FOUNDATION, LOYOLA UNIVERSITY MEDICAL CENTER, and KENNETH D. McCLATCHEY, D.D.S., M.D., ) | Case No. 97 C 6409 |
| Defendants. ) | |

## MEMORANDUM AND ORDER

Plaintiff, Areta Kowal-Vern, M.D., filed suit against Loyola University of Chicago ("Loyola University"), Loyola University Physician Foundation ("Foundation"), Loyola University Medical Center ("Medical Center"), and Kenneth D. McClatchey, D.D.S., M.D., in his official capacity (collectively "the defendants"). Kowal-Vern alleges that the defendants discriminated against her because of her gender and age in violation of Title VII, 42 U.S.C. § 2000e *et seq.*, the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, and Title IX of the Educational Amendments of 1972, 20 U.S.C. § 1681 *et seq.* Kowal-Vern's other federal claims involve two allegations of retaliatory discharge. Kowal-Vern also alleges three pendent state claims including breach of contract, slander, and unlawful economic credentialing.

This matter is before the court on defendants' motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. For the reasons stated below, defendants' motion for



summary judgment is granted as to Kowal-Vern's federal claims, Counts I, II, III, IV, and VII. Because Kowal-Vern's federal claims do not survive summary judgment, this court will not exercise jurisdiction over her pendent state law claims. Therefore, Counts V, VI, and VIII are dismissed without prejudice.

I. BACKGROUND

The following facts are drawn from the parties' Local Rule 56 submissions and are undisputed unless otherwise noted.[1]

A. Parties Involved and Kowal-Vern's Work History

The Foundation, Medical Center, and the Loyola University of Chicago Stritch School of Medicine are not-for-profit corporations separately incorporated under the laws of the State of Illinois. McClatchey is the Chairman of the Departments of Pathology at both the Medical Center and Loyola University School of Medicine.

Initially, Loyola University School of Medicine hired Kowal-Vern as an Assistant Professor of Pediatrics. In September 1992, Kowal-Vern resigned her faculty appointment in pediatrics and applied for a faculty appointment in the Department of Pathology. The acting Chairman of the Department of Pathology recommended to Dr. Daniel Winship ("Dean Winship"), Dean of the School of Medicine, that Kowal-Vern be appointed as an Assistant

---

[1] Kowal-Vern has not complied with Local Rule 56 because her Rule 56.1(b)(3) response to defendants' statement of material facts does not contain record citations. Therefore, the defendants' factual assertions in their Local Rule 56.1(a)(3) statement that are supported by the record are admitted. See Michas v. Health Cost Controls, 209 F.3d 687, 689 (7th Cir. 2000). Second, instead of confining her additional facts to a separate statement pursuant to Rule 56.1(b)(3)(B), Kowal-Vern commingled her response to the defendants' statement of material facts with additional facts. While the court will consider such facts to the extent that they are supported by the record, such commingling is improper. See Guzman v. Abbott Labs., 59 F.Supp.2d 747, 758 (N.D. Ill. 1999).

2

Professor in the Department of Pathology. Dean Winship concurred and recommended Kowal-Vern's appointment to Dr. Anthony L. Barbato, the Provost and Chief Administrative Officer of the School of Medicine. Barbato accepted this recommendation.

Effective November 9, 1992, Kowal-Vern became an Assistant Professor in the Department of Pathology on a "non-tenure" track. Non-tenure appointments are dependent on funding sources that are generally derived from clinical activities within the department. In addition, her appointment to the Loyola University School of Medicine was a "non-contracted faculty appointment," meaning that the appointment was committed by a letter of appointment and lasted the duration of one academic term subject to renewal each year.

In 1995, Kowal-Vern entered into a Service Provider Agreement with the Physician Foundation that could be terminated upon the loss of her full-time faculty status at the Loyola University School of Medicine. There is conflicting evidence as to whether Kowal-Vern held a faculty appointment only with the School of Medicine or jointly among the Loyola University School of Medicine, the Medical Center, and the Foundation. Nevertheless, Barbato renewed Kowal-Vern's annual faculty appointment at the School of Medicine for the four academic years from 1994 to 1998. At the time of each of those renewals, Kowal-Vern was over forty years of age.

### B. Pathology Departmental Reorganization and Downsizing

The Medical Center hired McClatchey as a special consultant in July 1995 and appointed him Chairman of the Department of Pathology on July 1, 1996. At that time, the department suffered from productivity problems including organizational deficiencies related to effective workload management, budgets, and expenses. From the time McClatchey was hired as

3

Chairman of the Pathology Department, he considered reorganizing the department and altering its philosophy and focus. The eventual departmental reorganization involved substantial changes in all areas of the department's operations, including faculty and non-faculty staffing changes in the clinical laboratories and anatomic pathology.

### C. Kowal-Vern's Termination

About the time of McClatchey's arrival at Loyola University, Kowal-Vern was nearing ten years of employment with Loyola and was seeking a promotion to Associate Professor. Her inquiries into this promotion produced little response. Meanwhile, on July 11, 1996, the Pathology Department Administrator sent an interdepartmental memorandum to all faculty members containing a draft of the foreseeable departmental reorganization and soliciting comments regarding that draft. In response to this memorandum, Kowal-Vern proposed the addition of a section of hematopathology and suggested that she be appointed as the director of that section. Her proposal was rejected.

On December 18, 1996, Drs. S. Alkan and E. Hsi were appointed as co-directors of the Hematopathology Laboratory. Both Alkan and Hsi are men who were under the age of forty when appointed. On December 19, 1996, the Laboratory Manager circulated a memorandum to the Clinical Laboratory Staff informing the staff that effective the following day, all clinical service specimens were to reviewed by Alkan and Hsi only.

On January 13, 1997, Loyola University's president, Barbato, and McClatchey received a letter from Kowal-Vern's attorney informing them of Kowal-Vern's problems with discrimination and requesting a meeting to resolve these problems. That same day, McClatchey submitted his recommendation that Kowal-Vern's faculty appointment not be renewed following

4

the 1997-98 academic term. Two days later, he conducted Kowal-Vern's annual employee performance review. During that evaluation, McClatchey critiqued the depth and quality of Kowal-Vern's research. His overall evaluation of her was "average."

After McClatchey recommended Kowal-Vern's non-renewal to Dean Winship, Dean Winship, in turn, recommended Kowal-Vern's non-renewal to Barbato. Only after the Committee on Faculty Appointments, which is roughly one-half female, prepared a final report regarding the non-renewal, did Barbato make the final decision to not renew Kowal-Vern's faculty appointment.

Dean Winship's recommendations for the non-renewals of faculty appointments were based on downsizing in the Department of Pathology because of funding considerations and the need to consolidate clinical areas. Six faculty appointments were not renewed beyond the 1996-97 academic term. Of these six non-renewals, four were men and two were women. Three faculty appointments were not renewed beyond the 1997-98 academic term, all three were women, including Kowal-Vern. On February 14, 1997, Kowal-Vern filed a charge with the EEOC. On March 25, 1997, Kowal-Vern received her official letter of termination.

## II. DISCUSSION

### A. Summary Judgment Standard

Summary judgment is appropriate when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Carrett*, 477 U.S. 317, 322-323 (1986). The court must evaluate the admissible evidence supporting the motion in a light most favorable to

the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The party opposing summary judgment "may not rest upon the mere allegations or denials of the adverse party's pleading;" rather, it must respond with "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

### B. Gender/Age Discrimination and Retaliatory Discharge (Counts I, II, and III)

Kowal-Vern alleges that the defendants discriminated against her based on her age and gender in violation of the ADEA and Title VII. She also alleges that the defendants retaliated against her in response to her filing a charge with the EEOC. A plaintiff alleging gender/age discrimination or retaliatory discharge may present either direct evidence of discrimination or indirect evidence under the *McDonnell Douglas* burden shifting method. *Kestering v. Wal-Mart Stores, Inc.*, 250 F.3d 1109, 1117 (7th Cir. 2001); *Jackson v. E.J. Brach Corp.*, 176 F.3d 971, 982 (7th Cir. 1999).

Kowal-Vern does not argue that there is direct evidence of discrimination, therefore, she proceeds under the burden shifting method. In order to establish a prima facie case of gender or age discrimination, Kowal-Vern must show that: (1) she was in a protected class; (2) she met her employer's legitimate job expectations; (3) she suffered an adverse employment action; and (4) her employer treated similarly situated people not in her protected class more favorably. *Jackson*, 176 F.3d at 982. For retaliatory discharge, Kowal must establish: (1) she engaged in a statutorily protected activity; (2) she suffered an adverse employment action; and (3) there is a causal connection between her protected activity and the defendants' decision to discharge her. *Kestering*, 250 F.3d at 1117. Once the plaintiff has established a prima facie case, the burden shifts to the defendant to articulate a nondiscriminatory explanation for the employment

6

decision. *Jackson*, 176 F.3d at 982. Then, the burden returns to the plaintiff to present evidence that the reasons offered by the defendant are a pretext for discrimination. *Id.*

This court need not decide whether Kowal-Vern has established a prima facie case of gender/age discrimination or retaliatory discharge because she has failed in her burden of establishing that the defendants' proffered reasons for her discharge were merely pretext. *See Essex v. United Parcel Serv., Inc.*, 111 F.3d 1304, 1309 (7th Cir. 1996) (court may advance to dispositive issue of pretext without deciding if plaintiff established prima facie case).

To establish pretext, a plaintiff must present evidence showing that the employer's proffered reasons are: (1) factually baseless; (2) not the actual motivation for the discharge; or (3) were insufficient to motivate the discharge. *Nawrot v. CPC, Int'l*, 277 F.3d 896, 906 (7th Cir. 2002) (citation omitted). An employer's decision can be mistaken, based on bad policy, or even stupid, as long as the employer honestly believed its explanation. *See Essex*, 111 F.3d at 1310.

Thus, to prevent summary judgment, Kowal-Vern must present evidence that the defendants were insincere when they claimed to have discharged her based on (1) the downsizing of the School of Medicine's Pathology Department; (2) the quality of her work and skills were inadequate to fill the needs and requirements in the Pathology Department at the time of the non-renewal of her annual faculty appointment; and (3) that her employment with the Foundation terminated upon the non-renewal of Kowal-Vern's annual faculty appointment.[2] *See id.* (plaintiff must present evidence that defendants' reasons for discharging him were insincere).

---

[2] Kowal-Vern does not address the defendants' third reason for her discharge. When defendants proffer more than one reason for an adverse employment action, a plaintiff must show that each reason is pretextual in order to survive summary judgment. *See Wolf v. Buss Am., Inc.*, 77 F.3d 914, 923 (7th Cir. 1996).

7

Based on her own affidavit, Kowal-Vern argues that there was no downsizing or actual plan of reorganization within the Department of Pathology. The defendants, however, have unequivocally established the existence of the downsizing and reorganization based on interoffice memoranda, letters, individual faculty non-renewal notices, Kowal-Vern's deposition testimony that McClatchey was undertaking a reorganization of the department, and Kowal-Vern's letter to McClatchey acknowledging the department's reorganization and her proposal regarding the hematopathology section. As such, Kowal-Vern has not established a genuine issue of material fact as to the department's downsizing. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (non-moving party must do more than show there is some "metaphysical doubt" as to the material facts).

Kowal-Vern also argues that the defendants disparaged her with assertions of unprofessional conduct and relied upon incidents that did not occur at the time of her non-renewal of her faculty appointment when evaluating her performance. Kowal-Vern does not elaborate further. Without any legal argument or conclusion, the court cannot say that Kowal-Vern has established a genuine issue for trial regarding the defendants' reasoning for the non-renewal of her faculty appointment. *See id.*

Indeed, Kowal-Vern's assertions that there were no factual bases for the defendants' proffered reasons for her discharge do not address whether the defendants honestly believed their reasons for Kowal-Vern's discharge. *See Nawrot*, 277 F.3d at 907. Kowal-Vern's arguments are nothing more than her own self-serving interpretations and denials that the reorganization and downsizing of her department occurred.

8

Kowal-Vern's self-serving statements cannot create a genuine issue of material fact for trial. *See Albiero v. City of Kankakee*, 246 F.3d 927, 933 (7th Cir. 2001); *see also Drake v. Minnesota Mining & Mfg. Co.*, 134 F.3d 878, 887 (7th Cir. 1998) (Rule 56 requires more than a bald assertion of the general truth of a particular matter – it requires affidavits that cite specific concrete facts establishing the existence of the truth). Therefore, defendants' motion for summary judgment as to Counts I, II, and III is granted.

### B. Gender Discrimination – Title IX (Count IV)

Kowal-Vern alleges that the defendants have discriminated against her based on her gender in violation of Title IX of the Educational Amendments of 1972. *See* 20 U.S.C. § 1681 *et seq.* Section 901(a) of Title IX provides that no person shall be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving federal financial assistance on the basis of sex. *See* 20 U.S.C. § 1681(a); *NCAA v. Smith*, 525 U.S. 459, 465-66 (1999).

Defendants correctly point out that Kowal-Vern does not claim that the defendants prevented her from competing for federal grant money for research. Thus, she has not established that she was barred access to an educational benefit or program as required under the statute. *See Davis v. Monroe County Bd. of Educ.*, 526 U.S. 629, 633 (1999) (private damages are available in a suit based on Title IX where recipient of federal funding bars the victim's access to an educational benefit or program).

More importantly, Kowal-Vern cannot bring a private cause of action under Title IX because the remedies she seeks are also afforded under Title VII. *See Howard v. Board of Educ. of Sycamore Cmty. Unit Sch. Dist.*, 893 F.Supp. 808, 814-15 (N.D. Ill. 1995). Because Kowal-

Vern brings claims under both Title VII and Title IX based on the same set of facts asking for the same remedies, Title VII is the exclusive remedy for her claim of employment discrimination based on gender. *See Waid v. Merrill Area Pub. Sch.*, 91 F.3d 857, 861-62 (7th Cir. 1996) (Title VII provides a comprehensive and carefully balanced remedial mechanism for redressing employment discrimination); *see also Lakowski v. James*, 66 F.3d 751, 755 (5th Cir. 1995) ("Congress intended Title VII to exclude a damage remedy under Title IX for individuals alleging employment discrimination"). Therefore, defendants' motion for summary judgment as to Count IV is granted.

### C. Retaliation Through Adverse Employment References (Count VII)

Kowal-Vern alleges that McClatchey retaliated against her by providing untruthful employment references after the non-renewal of her faculty appointment. A former employee may sue under Title VII for post employment acts of retaliation if the alleged acts of retaliation impinge on her future employment prospects or have a nexus to future employment. *Ruedlinger v. Jarrett*, 106 F.3d 212, 214 (7th Cir. 1997). To prove liability, Kowal-Vern must demonstrate an "employment impairment that evidences actionable retaliation." *Veprinsky v. Fluor Daniel, Inc.*, 87 F.3d 881, 891 (7th Cir. 1996) (internal citations omitted).

Kowal-Vern has not alleged nor has she argued that the statements made by McClatchey impaired her prospective employment opportunities or had a nexus to any future employment. In addition, Kowal-Vern does not identify the individuals to whom the adverse information was disseminated. Without more than these conclusory statements, Kowal-Vern cannot survive summary judgment on this count. *See Patt v. Family Health Sys., Inc.*, 280 F.3d 749, 753 (7th Cir. 2002) (where employer dropped hints about his negative views of plaintiff in a background

check, and plaintiff did not present more specific evidence showing how defendant limited her career opportunities, court could not conclude that plaintiff suffered an adverse employment action). Therefore, the defendants' motion for summary judgment as to Count VII is granted.

### D.     Pendent State Claims (Counts V, VI, and VIII)

When a plaintiffs' federal claims do not survive summary judgment, the court may decline to exercise supplemental jurisdiction over the pendent state claims pursuant to 28 U.S.C. § 1367(c)(3). *See Bilow v. Much Shelist Freed, P.C.*, 277 F.3d 882, 886 (7th Cir. 2001). "It is the well-established law of this circuit that the usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial." *Groce v. Eli Lilly & Co.*, 193 F.3d 496, 501 (7th Cir. 1999). Although pendent jurisdiction is a doctrine of discretion and not a plaintiff's right, federal courts must choose the course that will best serve the principles of judicial economy, convenience, fairness, and comity. *See City of Chicago v. International College of Surgeons*, 522 U.S. 156, 172-73 (1997). For instance, the federal retention of state law claims is appropriate when it is absolutely clear how the claims will be decided. *See Centres, Inc. v. Town of Brookfield*, 148 F.3d 699, 704 (7th Cir. 1998); *see also Coe v. County of Cook*, 162 F.3d 491, 496 (7th Cir. 1998) (when state law claim is clearly without merit, supplemental jurisdiction is proper).

Here, the relationship between the state and federal claims is attenuated, that is, there is little overlap between the slander, breach of contract, and economic credentialing claims and the federal discrimination claims that this court has already decided. *See Bilow*, 277 F.3d at 896. Further, based on the evidence and arguments presented, this court cannot say that the state law claims are clearly without merit or that it is absolutely clear how these state claims should be

11

decided. In addition, because the state law claims involve different facts and law not examined by this court when determining the federal employment discrimination claims, there would not be a substantial duplication of effort if the state law claims were tried in state court. *See Wright v. Associated Ins. Cos., Inc.*, 29 F.3d 1244, 1251 (7th Cir. 1994) (federal court should have relinquished jurisdiction over state law claims when the federal claims were dismissed and there was very little federal judicial investment in the state law claims).

Therefore, this court declines to exercise supplemental jurisdiction over Kowal-Vern's slander, breach of contract, and unlawful economic credentialing claims. As such, Counts V, VI, and VII are dismissed without prejudice.

## III. CONCLUSION

For the foregoing reasons Defendants' Motion for Summary Judgment [69-1] is GRANTED as to the federal claims, Counts I, II, III, IV, and VII. The court declines to exercise supplemental jurisdiction on the state claims. Accordingly, the state claims, Counts V, VI, and VIII, are dismissed without prejudice. The court, having disposed of all of Kowal-Vern's federal question claims, directs the clerk of the court to enter Rule 58 judgment and terminate this case from the court's docket.

ENTER: *Blanche M Manning*

BLANCHE M. MANNING
U.S. DISTRICT COURT JUDGE

DATE: 8-13-02